

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF VIRGINIA**

**Richmond Division**

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 3:25-cr- **145** |
| v. | 18 U.S.C. § 371<br>Conspiracy to Commit Mail Fraud<br>(Count 1) |
| CODY CAVALLARO, | |
| *Defendant.* | Forfeiture Allegation |

## CRIMINAL INFORMATION

THE UNITED STATES ATTORNEY CHARGES THAT:

### COUNT ONE
Conspiracy to Commit Mail Fraud

1.     Between in or about March 2022 and continuing through on or about April 17, 2025, in the Eastern District of Virginia and elsewhere, defendant CODY CAVALLARO, along with other conspirators known and unknown, did knowingly and willfully combine, conspire, confederate, and agree with each other and others known and unknown, to commit the following offenses against the United States, to wit: Mail Fraud, that is, to knowingly devise and intend to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute that scheme and artifice to defraud, knowingly caused to be delivered by mail and private and commercial interstate carriers certain mail matters, all in violation of Section 1341 of Title 18, United States Code.

2.     The defendant's scheme and artifice to defraud, and the execution thereof, operated in substance as follows.

## I.    Manner and Means of the Conspiracy

3.    The purposes of the conspiracy were for CAVALLARO and his coconspirators to steal merchandise from online retailers through a "return fraud" scheme; to sell the stolen merchandise in exchange for funds that that CAVALLARO and his coconspirators would use for their personal benefit; and to conceal the conspiracy and scheme to defraud from law enforcement and from victims of CAVALLARO's criminal conduct.

## A.    Background

4.    CAVALLARO conspired to execute a "return fraud" scheme by stealing merchandise from at least seven online retailers, including The Home Depot, Amazon, and Walmart, and then selling the stolen merchandise on third-party online platforms for personal profit.    Over the course the conspiracy, CAVALLARO placed hundreds of orders for merchandise with online retailers.    After receiving this merchandise, CAVALLARO and his coconspirators submitted fraudulent return requests that deceived the retailers into issuing CAVALLARO refunds for the (purportedly returned) merchandise.    In truth and in fact, however, CAVALLARO did not return the goods to the retailers; instead, CAVALLARO sold the goods on Amazon and other platforms to unwitting purchasers.

5.    CAVALLARO conspired with individuals known and unknown using a cloud-based instant messaging and social media application called Telegram.    CAVALLARO used Telegram to communicate with his coconspirators about how to execute the return fraud scheme. CAVALLARO agreed to pay his coconspirators a cut—typically 15% of CAVALLARO's proceeds from a given transaction—and in exchange, the coconspirators would submit fraudulent return requests to retailers on CAVALLARO's behalf.    Over time, CAVALLARO learned how to execute the return fraud scheme without such third-party assistance, and CAVALLARO began

2

doing so without the assistance (and thus, without the accompanying cost) of his coconspirators beginning in or around 2024.

6.     From March 2022 to June 2024, CAVALLARO resided in a single-family residence on Chimborazo Boulevard in Richmond, Virginia, within the Eastern District of Virginia, and he executed the scheme from this residence.    From June 2024 to April 2025, CAVALLARO lived in Charleston, North Carolina, where he continued to execute his scheme to defraud until he was confronted by federal law enforcement agents about his criminal conduct.

7.     In total, CAVALLARO caused an actual loss to seven different retailers of $768,127.00.    In addition, CAVALLARO attempted, but ultimately failed, to order and fraudulently return merchandise worth an additional $586,577.62.

**B.     How the Return Fraud Scheme Operated**

8.     To conduct his return fraud scheme, the defendant typically undertook the following steps.

9.     CAVALLARO would first place an online order for merchandise with a retailer (such as The Home Depot).    The defendant trafficked in a variety of goods, including ceiling fans, water heaters, and bathroom appliances.    The defendant routinely directed that his orders be delivered to his home on Chimborazo Boulevard in Richmond, Virginia.

10.     When he placed the online orders, the defendant undertook extensive effort to circumvent retailers' loss-prevention systems.    The retailers' loss prevention systems attempted to identify and stop fraudulent returns by, in part, automatically analyzing order information such as the purchaser's name, email address, phone number, and shipping address.    After a retailer's loss-prevention system identified a particular purchaser (using, in part, the aforementioned order

information) as having engaged in fraudulent returns, the retailer prevented the purchaser from placing future orders.

11.    CAVALLARO evaded these loss-prevention systems by submitting false information to the retailer when he placed his orders.   For example, the defendant routinely manipulated his shipping address when placing orders with retailers.   On a few occasions, CAVALLARO entered his shipping address as "[Street Number] Chimborazo Blvd Floor 13," despite the fact he lived in a two-story single-family home.   The defendant entered dozens of different versions of his home address while placing orders in his efforts to both execute and conceal his scheme.   In addition, the defendant used hundreds of different names (e.g., "Cody Coco," "Pool Guy," and "Ziggy Slams"), hundreds of different email addresses (e.g., codylakecody@gmail.com,  CocoBaggins84@dcgub.com,  and  poolguy311@tudnt.com),  and hundreds of different phone numbers when submitting online orders with retailers.

12.    After the U.S. Postal Service or a commercial carrier such as UPS or FedEx delivered the merchandise to the defendant's residence, the defendant or a coconspirator, working together and in concert, would submit an online request to return the goods to the retailer.   The retailer would provide a digital copy of a shipping label to the defendant or his coconspirator, to be printed and placed on the outside of the package containing the returned merchandise.

13.    The defendant or a coconspirator, again, working together and in concert, would then digitally manipulate the shipping labels provided by the retailers to alter the printed delivery address.   For example, The Home Depot provided shipping labels that contained both the printed delivery address of The Home Depot's return facility in Pittston, Pennsylvania, and a corresponding barcode linked to that same location.   The defendant or his coconspirators routinely altered the printed delivery address on those shipping labels to reflect a delivery address

4

associated with a McDonalds located in Wilkes Barre, Pennsylvania.    Notably, the coconspirators did not alter the barcodes on the shipping labels, thus allowing the carrier's automated systems to continue to treat the package as deliverable to the retailer's return facility.    The resulting shipping label therefore contained (a) an altered, printed version of the delivery address, and (b) the original, barcode version of the delivery address.

14.    The coconspirators then applied the manipulated shipping labels to empty envelopes—which did not contain the merchandise the coconspirators purported to return to the retailer—and caused the envelopes to be placed in the mail stream.    On many occasions, when a package carrier scanned the envelope's barcode and logged receipt of the return package, the retailer automatically issued a refund to the defendant before the retailer received the return package (that is, the empty envelopes) at the retailer's return facility.    Moreover, the defendant's and his coconspirators' manipulation of the printed address on the return label often caused the package carrier to fail to deliver the return package to the retailer due to the mismatch between the printed delivery address and the delivery address associated with the barcode on the label.    In any event, retailers routinely issued refunds to CAVALLARO after the defendant and his coconspirators deceived the retailers into believing that the defendant had properly returned the merchandise to the retailer.

15.    CAVALLARO kept the merchandise that he stole through the return fraud scheme for his own personal benefit, which included selling the merchandise for personal profit.    The defendant operated multiple online store fronts, including on the online marketplaces Amazon.com and Mercari.com, where he sold the stolen goods to unwitting purchasers.

## II.    Overt Acts

16.    In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the Eastern District of Virginia and elsewhere.   These overt acts included the defendant's efforts to both execute his scheme to defraud, and to conceal the operation and existence of his fraud scheme from law enforcement and victims.

### A.    Specific Example of the Defendant Executing the Scheme

17.    On or about April 23, 2023, the defendant placed an online order on The Home Depot's website for 30 "Big A\*\* Fans," bearing the item name "Haiku L 52 in. Indoor White Ceiling Fan Integrated LED with Light, Works with Alexa, Remote Control Included."   The total cost of the order was $22,500, which the defendant paid using a credit card.   The defendant entered his then-home address as the shipping address, "[Street Address] Chimborazo Boulevard," and    he    used    the    false    customer    name    of    "Pineapple    Beach,"    the    email "pineapplebeach21@dcgub.com," and a fake phone number when placing the order.   UPS delivered the items to the defendant's residence on or about the following week.

18.    The defendant or a coconspirator thereafter submitted a return request to The Home Depot, and in response, The Home Depot issued a shipping label for the defendant to use to return the fans.   The conspirators then altered the printed delivery address on that shipping label and placed the manipulated label on an empty envelope before causing the envelope to be deposited with UPS.   After UPS scanned the label's bar code on the empty envelope, The Home Depot issued a refund to CAVALLARO's credit card in the amount of $22,500.   Despite receiving a full refund, CAVALLARO kept the 30 ceiling fans, and the defendant placed the items for sale on his Amazon marketplace storefront.   As of August 2023, CAVALLARO's Amazon storefront

6

offered several "Big A** Fans Haiku L Smart Ceiling Fan, 52 [in.], White"—matching the item name from the goods the defendant stole from The Home Depot—for sale to unwitting purchasers.

**B.    Efforts to Conceal the Return Fraud Scheme**

19.    The defendant undertook several additional efforts to conceal the scheme and to retain fraudulent proceeds of the scheme.

20.    For example, in late 2023, a loss prevention investigator working for Amazon contacted the defendant because Amazon was concerned that the defendant might have fraudulently obtained a large volume of ceiling fans that the defendant had listed for sale on his Amazon storefront.    The Amazon investigator asked the defendant to provide business records indicating the defendant's source for obtaining the ceiling fans.    The defendant, in turn, fabricated an invoice from another retailer, Hoffman & Hoffman, Inc., out of whole cloth.    The fraudulent invoice purported to reflect that the defendant had obtained 150 Big A** Fans from Hoffman & Hoffman for a total of $74,998.50.    In truth and in fact, the defendant never made any purchases from Hoffman & Hoffman, and the defendant had stolen the Big A** Fans listed on his Amazon storefront from other retailers, including The Home Depot.    Nevertheless, the defendant provided the Amazon investigator with a copy of the fraudulent Hoffman & Hoffman invoice in a deceitful attempt to quell Amazon's concerns about the defendant's source of goods.

21.    In addition, the defendant undertook efforts to combat retailers' attempts to claw back fraudulently issued refunds.    For a time, the defendant not only used Amazon's platform to carry out the re-sale portion of his fraud scheme (posting his stolen goods for sale on Amazon); but he also victimized Amazon by executing the return fraud portion of his scheme on Amazon's platform: that is, following his standard procedure described above, the defendant ordered goods from Amazon, placed bogus return requests, and fraudulently obtained refunds from Amazon.    In

or around September 2022, Amazon uncovered a portion of the defendant's return fraud scheme, and in an effort to recoup its fraudulent refund payments to the defendant, Amazon issued "charge backs" on the defendant's American Express credit card totaling $117,447.62 on or about September 22, 2022.

22.     When the defendant learned of Amazon's charge backs, he immediately submitted a fraud report to American Express in which the defendant falsely claimed that Amazon's charge backs were fraudulent.    American Express, believing the defendant's fraud claim to be true and accurate, credited the defendant's account with the full $117,447.62.    In this instance, American Express was left as the victim of the defendant's fraudulent conduct.

### III.    Defendant's Confession

23.     On or about April 17, 2025, the defendant agreed to participate in a voluntary interview with Special Agents of the United States Secret Service regarding his return fraud scheme.    At the time, the defendant had placed a fraudulent return request with The Home Depot as recently as the day before the interview.    During the interview, the defendant readily admitted his misconduct acknowledging that he and coconspirators with whom he communicated on Telegram conspired to submit fraudulent return requests to retailers in order to execute the return fraud scheme described above.    The defendant further acknowledged that he began operating the return fraud scheme on his own after realizing that he no longer needed to incur the expense of working with his coconspirators.

### IV.    Representative Mailing

24.     On or about April 23, 2023, in the Eastern District of Virginia, for the purpose of executing or attempting to execute the above-described scheme and artifice to defraud and deprive, the defendant, CODY CAVALLARO, knowingly caused to be delivered by a private

8

and commercial interstate carrier, United Parcel Service, Inc., according to the direction thereon, the following matter: at least one parcel containing ceiling fans that the defendant later misappropriated from The Home Depot and sold on Amazon's marketplace for the defendant's personal benefit.

      (In violation of Title 18, United States Code, Section 371.)

## FORFEITURE ALLEGATION

Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, the defendant is hereby notified that if convicted of the offense charged in Count One of this Information, he shall forfeit to the United States any property, real or personal, which constitutes or is derived from any proceeds traceable to the offense.

Property subject to forfeiture includes, but is not limited to:

The sum of at least $768,127, which represents the amount of proceeds the defendant obtained from the offense of conviction, which sum shall be reduced to a money judgment against the defendant in favor of the United States.

If the property subject to forfeiture cannot be located, the United States will seek an order forfeiting substitute assets.

(In violation of Title 18, United States Code, Section 981(a)(1)(C), as incorporated by Title 28, United States Code, Section 2461 and Title 21, United States Code, Section 853(p)).)

Respectfully submitted,

Lindsey Halligan
United States Attorney

Date: October 10, 2025          By: _____

Robert S. Day
Assistant United States Attorney

10